FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Dec 01 2025

KEVIN P. WEIMER, Clerk

By: Nicole Lawson Jenkins
Deputy Clerk

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Nelson Enrique Sorto

**CRIMINAL COMPLAINT**

Case Number: 1:25-MJ-1256

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 21, 2025 in Fulton County, in the Northern District of Georgia, the defendants did, knowingly possess with the intent to distribute a controlled substance, that is, at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a schedule II-controlled substance,

in violation of Title 21, United States Code, Sections 841(a) and (b)(1)(A).

I further state that I am a Special Agent with the FBI and that this complaint is based on the following facts:

**PLEASE SEE ATTACHED AFFIDAVIT**

Continued on the attached sheet and made a part hereof.   Yes

*Tim O'Brien*
Signature of Complainant
Tim O'Brien

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to me by telephone pursuant to Federal Rule of Criminal Procedure 4.1.

December 1, 2025                                    at   Atlanta, Georgia
Date                                                     City and State

CATHERINE M. SALINAS                                *Catherine Salinas*
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer                   Signature of Judicial Officer

AUSA Dwayne A. Brown Jr. / 404-581-6083
Dwayne.Brown@usdoj.gov

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Timothy O'Brien, with the Atlanta Division of the Federal Bureau of Investigation ("FBI"), duly sworn, do state the following:

1. This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint that on or about November 20 and November 21, 2025, in the Northen District of Georgia, Nelson Enrique SORTO, the Defendant, did knowingly and intentionally possess with intent to distribute a controlled substance, that is, at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21, United States Code, Section 841(b)(1)(A), all in violation of Title 21, United States Code, Section 841(a);

**AFFIANT BACKGROUND**

2. I am an "investigative or Law enforcement Officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent ("SA") of the United States Department of Justice, Federal Bureau of Investigation ("FBI"), and have been so employed since December 2022. During that time, I have been assigned to an investigative unit dealing with organized crime, drug trafficking, and money laundering. During my training at the FBI Academy in Quantico, Virginia, I received extensive training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches and the legal requirements for the interception of telephone communications. Prior to joining the FBI, I spent approximately eleven and a

half years as a Police Officer/Detective in Arlington, VA where I investigated numerous offenses including narcotics, firearms, and gang-related offenses as well as processed and collected latent fingerprint evidence. During my law enforcement career, I participated in the execution of numerous search warrants for residences in connection with drug investigations. I have also participated in numerous arrests for drug offenses. In that capacity, I have seized or participated in the seizure of many types of drug evidence, drug paraphernalia, drug records, drug proceeds, and evidence of associated offenses like firearms offenses.

3. I am familiar with and have used many of the traditional methods of investigation, including, without limitation, visual surveillance, electronic surveillance, informant and witness interviews, consensually recorded telephone conversations, wiretap investigations, defendant debriefings, the use of confidential sources, execution of search warrants, the seizure of drug evidence, and controlled purchases of drugs, among others.

4. Conservatively, I estimate that I have been involved in over one hundred drug investigations, in which traditional methods of investigation were used that have resulted in the arrests of individuals who manufactured, smuggled, received, and distributed controlled substances, and where illegal narcotics and narcotics proceeds were seized. In connection with those and other narcotics cases, I have conducted follow-up investigations relating to the laundering and concealment of assets, analysis of bank and other financial records, and identification of conspirators through ledgers, telephone bills, records, and photographs.

## SOURCES OF INFORMATION

5.      I have personally participated in this investigation as described herein. In addition, I have reviewed information obtained from law enforcement and commercial databases, and I have discussed this case with other law enforcement officers who are involved in this investigation or who have previously investigated subjects of this investigation.  Because this Affidavit is being submitted for the limited and specific purpose of establishing probable cause to support a Criminal Complaint, I have not included every fact known to law enforcement concerning this investigation.

## PROBABLE CAUSE

6.      On November 20, 2025, while participating in an ongoing narcotics investigation, the Federal Bureau of Investigation (FBI) surveilled a cold storage warehouse in College Park, GA.  Law enforcement expected a shipment of narcotics to be received at the warehouse and transported using a refrigerated box truck. Before noon that day, Agents surveilled three refrigerated box trucks at the cold storage facility, including a white Penske truck bearing Indiana license plate 3133897 ("target truck"). All three trucks were parked at the same loading dock. Agents observed two individuals inside the target truck, including an unidentified female driver (UF1) and the front seat passenger, later identified as Nelson Enrique SORTO.

7.      At approximately 3:30 p.m. agents followed the target truck as it departed the cold storage facility. Approximately 15 minutes later, the target truck stopped at a library in Atlanta. At the library, SORTO exited the target truck and entered the driver's

3

seat of a white GMC Acadia bearing Georgia license plate SDI6502. Less than ten minutes later, the UF1 departed the library in the target truck, followed closely by SORTO, in the Acadia. UF1 and SORTO, in their respective vehicles, travelled well below the posted speed limit. Based on my training and experience, UF1 and SORTO's driving patterns were consistent with the transportation of contraband, as drug traffickers believe driving below the speed limit will not attract the attention of law enforcement.

8. UF1 and SORTO travelled in tandem, and both arrived at 881 Custer Avenue SE in Atlanta, GA (target location) around 4:30 p.m. SORTO, in the Acadia, arrived at the target location shortly before UF1 in the target truck. When UF1 arrived at the target location, she attempted but failed to park the target truck in the front yard—striking a mailbox in the process. After the failed attempt, UF1 drove the target truck to Fisher Road, a nearby street, where she met SORTO, who was on foot. SORTO then entered the target truck and drove it towards the target location. SORTO parked the target truck in the driveway at the target location. The front end of the truck faced the entrance to the target location and the rear of the truck faced the street.

9. Agents observed SORTO conversing on the phone near the rear bumper of the target truck and he appeared to video record the rear bumper of the truck. After a few minutes SORTO walked inside the target location. Minutes later, SORTO exited the target location and returned to the target truck. SORTO opened the rear door of the target truck and climbed inside back storage area. After briefly examining the storage area and its contents, SORTO jumped down and closed the door (the truck was filled with boxes from the bed of the truck to about 7/8's of the way to the roof). Next, SORTO appeared

4

to measure the length of the target truck by walking next to the truck as he placed one foot directly in front of the other, likely attempting to estimate the space needed to offload the truck.

10. Approximately two hours later, agents from the Georgia Bureau of Investigation (GBI) responded to assist with the investigation. Shortly after midnight on November 21, 2025, GBI agents observed three males, including SORTO, enter the Acadia and leave the target location. Troopers from the Georgia State Patrol (GSP) initiated a traffic stop on the Acadia and found SORTO driving the vehicle. Troopers recovered two firearms inside the Acadia, a 9mm Ruger pistol between the driver's seat and the center console, and a .22 caliber revolver between the front passenger's seat and the center console[1]. Based on my training and experience, the recovered firearms are significant as drug traffickers routinely carry firearms to protect themselves, their product, and their proceeds. Along with the firearms, agents also located several containers of blackberries inside of the Acadia.

11. GBI agents obtained a state warrant to search the target location[2], including the target truck. Federal and state agents searched the target location and recovered 419 kilograms of suspected methamphetamine concealed in pallets of blackberries.[3] Based on

---

[1] SORTO was prohibited from possessing a firearm because of his 2024 felony conviction for possession of methamphetamine out of Hall County, GA.  He received a sentence of three years on probation under Georgia's first offender program.
[2] Based on records provided by the Georgia Department of Community Supervision, SORTO lived at the Target Location.
[3] The packages seized from the target truck matched an earlier seizure of approximately 300 packages that also contained a clear crystalline substance.   The prior shipment was also concealed in blackberries and field tested positive for methamphetamine.

my training and experience the substance appeared to be methamphetamine and it matched an earlier seizure of suspected methamphetamine from Hall County.

12.   Agents also located several boxes of blackberries on the ground near the target truck.  Below are photographs of the suspected methamphetamine concealed within the shipment of blackberries:



6



13. Following the seizure, SORTO was arrested on state charges and booked into Fulton County Jail.

14. Below is a photograph of the total amount of suspected methamphetamine seized from the target truck—approximately 419 kilograms:



## CONCLUSION

15.     Based on the foregoing information, I submit that there is probable cause to believe that on or about November 20 and 21, 2025, in the Northern District of Georgia, SORTO did knowingly and intentionally possess with the intent to distribute a controlled substance, said substance involving at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, pursuant to Title 21 United States Code, Section 841(b)(1)(A), all in violation of Title 21 United States Code, Section 841(a).

**END OF AFFIDAVIT**